# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EDWARD IONNI, derivatively on behalf of ITERIS, INC. and individually and on behalf of himself and all other similarly situated stockholders of ITERIS, INC. <br><br> Plaintiff, <br><br> v. <br><br> JOE BERGERA, RICHARD CHAR, KEVIN C. DALY, GREGORY A. MINER, ABBAS MOHADDES, GERARD M. MOONEY, THOMAS L. THOMAS, MIKEL H. WILLIAMS, AND ITERIS, INC. <br><br> Defendants. <br><br> and <br><br> ITERIS, INC., <br><br> Nominal Defendant. | C.A. No. _____ |

## VERIFIED STOCKHOLDER DERIVATIVE AND CLASS ACTION COMPLAINT

Plaintiff Edward Ionni ("Plaintiff") asserts on behalf of himself and other similarly situated stockholders of Nominal Defendant Iteris, Inc. ("Iteris" or the "Company") a claim for breach of fiduciary duty, and derivatively on behalf of Iteris, claims for breach of fiduciary duty and unjust enrichment, against former and current members of Iteris's Board of Directors (the "Board").[1]

---

[1] Plaintiff's allegations are made upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based upon the investigation conducted by

## NATURE AND SUMMARY OF THE ACTION

1. This class and derivative action is brought to remedy false and misleading disclosures made by the Board to Iteris's stockholders in proxy statements issued in connection with the Company's 2014 and 2015 annual meetings of stockholders, and to recover on the Company's behalf stock options granted as a result of those tainted votes, including stock options granted to the Company's Chief Executive Officer and President, Joe Bergera ("Bergera").

2. In the Company's 2014 and 2015 proxy statements, Iteris stockholders were asked to approve amendments to Iteris's 2007 Omnibus Incentive Plan (the "Plan") increasing the number of shares of Iteris common stock reserved for issuance under the Plan by a total of 2,500,000 shares (1,500,000 in 2014 and 1,000,000 in 2015). In the 2014 and 2015 proxy statements, the Board recommended that stockholders approve these amendments so that the Company would have sufficient shares to make equity awards to the Company's more than 300 employees.

3. The 2014 and 2015 proxy statements affirmatively represented that no person could receive more than 500,000 stock options or stock appreciation rights ("SARs") under the Plan during any fiscal year.

4. However, the Plan did not have a per-participant fiscal year limit. Rather, in a textbook "bait-and-switch," pursuant to the actual terms of the Plan, as opposed to the description in the 2014 and 2015 proxy statements, the Board had provided itself with unilateral authority to disregard the purported per-participant fiscal year limits that are falsely described in the 2014 and 2015 proxy statements as absolute. Thus, in actual fact, the "limits" described in the 2014 and 2015 proxy statements only apply if the Board's Compensation Committee (the "Compensation Committee") decides to "provide" that the limit "is applicable to a particular [a]ward."

---

and through his attorneys, which included, *inter alia*, a review of documents filed by Iteris with the U.S. Securities and Exchange Commission (the "SEC"), and media reports.

5. As such, the 2014 and 2015 proxy statements were materially false and misleading. The proxy solicitations prevented Iteris's stockholders from making informed decisions about whether to approve the Plan amendments. On the basis of these false and misleading disclosures, Iteris stockholders voted to approve the respective Plan amendments at the 2014 and 2015 annual meetings.

6. ***In September 2015, the Board granted Joe Bergera 1,350,000 stock options – 850,000 shares in excess of the "limit" as represented to stockholders***. Bergera's stock option grant illustrates the unfairness of the Board's conduct. In one fell swoop, the Board utilized 54% of the 2.5 million share capacity provided by the 2014 and 2015 amendments in a single award to one employee. This grant diluted the Company's stockholders, and undermined the Plan's stated purpose to serve as an equity vehicle for *all* of the Company's employees. Had stockholders been told the truth in the 2014 and 2015 proxy statements and thus understood the import of the Plan's *actual terms*, they very well may have decided not to authorize the Board to issue the additional 2.5 million shares.

7. Accordingly, Plaintiff brings this action seeking a cancellation of the Plan amendments that were approved at the Company's 2014 and 2015 annual meetings on the basis of the materially false and misleading representations made by the Board, and a rescission of the stock options wrongfully granted pursuant to those defective Plan amendments.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs. Plaintiff is a citizen of Pennsylvania and no defendant is a citizen of Pennsylvania. This Court also has supplemental jurisdiction over the class claims herein pursuant to 28 U.S.C. § 1367(a).

9. This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. Venue is proper in this district because Defendant

Iteris is incorporated in this District and because a substantial portion of the wrongs complained of herein occurred in this District.

## PARTIES

10. Plaintiff purchased Iteris common stock in 2012 and is, and has been at all relevant times, the owner of Iteris stock. Plaintiff is a citizen of Pennsylvania.

11. Iteris is a corporation organized and existing under the laws of the State of Delaware, and maintains its principal offices at 1700 Carnegie Avenue in Santa Ana, California. According to its SEC filings, Iteris is "a provider of intelligent information solutions for both the traffic management and global agribusiness markets."

12. Defendant Joe Bergera has served as Iteris's President, Chief Executive Officer, and a director since September 2015. On information and belief, Bergera is a citizen of California.

13. Defendant Richard Char ("Char") has been an Iteris director since 2005. On information and belief, Char is a citizen of California.

14. Defendant Kevin C. Daly ("Daly") has been an Iteris director since 1993. On information and belief, Daly is a citizen of California.

15. Defendant Gregory A. Miner ("Miner") has been an Iteris director since 1998 and Chairman of the Board since 2004. On information and belief, Miner is a citizen of California.

16. Defendant Abbas Mohaddes ("Mohaddes") served as the Company's Chief Executive Officer from March 2007 until February 25, 2015, and as a director from September 2005 until February 25, 2015. On information and belief, Mohaddes is a citizen of California.

17. Defendant Gerard M. Mooney ("Mooney") has been an Iteris director since 2013. On information and belief, Mooney is a citizen of California.

18. Defendant Thomas L. Thomas ("Thomas") has been an Iteris director since 1999. On information and belief, Thomas is a citizen of Florida.

19. Defendant Mikel H. Williams ("Williams") has been a director of Iteris since April 2011. On information and belief, Williams is a citizen of California.[2]

## DUTIES OF THE INDIVIDUAL DEFENDANTS

20. By reason of their positions as directors, the Individual Defendants owe the Company and its stockholders fiduciary duties of good faith, loyalty, due care, and candor, and are required to manage the Company in a fair, just, honest, and equitable manner.

21. Among other things, the Individual Defendants were and are required to make full, fair, and truthful disclosures to Iteris's stockholders, including when seeking stockholder approval for Board actions or proposals.

22. Because of their positions with the Company, the Individual Defendants were able to and did in fact exercise control over the wrongful acts complained of herein.

## FURTHER SUBSTANTIVE ALLEGATIONS

**A. Section 162(m) of the Internal Revenue Code**

23. Section 162(m) of the Internal Revenue Code, 26 U.S.C. § 162(m) ("Section 162(m)"), subjects publicly-held corporations to special restrictions concerning the compensation paid to their chief executive officer and the next three most highly compensated executives of the company, not including the chief financial officer (the "Covered Employees").

24. According to its legislative history, Section 162(m) was motivated by concerns about corporate abuses involving excessive executive compensation in public companies, and the law is intended to bring about a reduction in the prevalence of these abuses.

---

[2] References to the "2014 Board" are to Defendants Char, Daly, Miner, Mohaddes, Mooney, Thomas, and Williams. References to the "2015 Board" are to Defendants Char, Daly, Miner, Mooney, Thomas, and Williams. Defendants Bergera, Char, Daly, Miner, Mohaddes, Mooney, Thomas, and Williams are referred to herein as the "Individual Defendants."

25. Whereas Section 162(a)(1) of the Code generally allows a publicly-held corporation to take an income tax deduction for "a reasonable allowance for salaries or other compensation for personal services actually rendered" by its employees, Section 162(m) provides that compensation in excess of $1 million paid by a publicly-held corporation to a Covered Employee is generally not tax-deductible.

26. Section 162(m)(4)(C) provides an exception to this rule in the case of compensation that is structured in a manner that qualifies as "performance-based compensation." The ability to take advantage of this exception is guided by Section 1.162-27 of the Treasury Regulations ("Treas. Reg.") promulgated under Section 162(m), which provides a set of rules that must be followed in order for compensation to qualify as "performance-based compensation" and be tax-deductible under §162(m)(4)(C).

27. For stock options and stock appreciation rights ("SARs") to qualify as "performance-based compensation" under Section 162(m), Treas. Reg. §1.162-27(e)(2)(vi)(A) requires (i) that the stock options be granted exclusively by two or more members of the Board who qualify as "outside directors" in accordance with Section 162(m)'s regulations; (ii) that the exercise price of the stock options (or deemed exercise price with respect to the SARs) be no less than the fair market value of the shares on the date of grant; and (iii) *that the awards be granted pursuant to a stockholder-approved plan that discloses "the maximum number of shares with respect to which options or rights may be granted during a specified period to any employee."*

28. With respect to the third requirement above, stockholder-approved compensation plans that contain these limits provide companies with the ability to grant stock options and SARs that qualify as "performance-based compensation" under Section 162(m).

29. In sum, stock options that are granted by two or more "outside directors" at an exercise price that is no less than the fair market value of the Company's stock price at the time of grant, and in an amount that is within the stockholder-approved per-participant limit will qualify as "performance-based compensation" under Section 162(m).

**B.  Iteris's 2007 Omnibus Incentive Plan**

30. On July 19, 2007, the Board adopted the Plan, which was approved by stockholders on September 21, 2007.

31. The Plan originally reserved 850,000 shares of Iteris common stock for issuance as equity compensation in the form of stock options, stock appreciation rights, restricted stock, restricted stock units, performance awards, dividend equivalents, and other stock-based awards to the Company's employees, officers, consultants, independent contractors, advisors and directors.

32. In 2009, the Board adopted and the Company's stockholders approved an increase in the number of shares reserved for issuance under the Plan from 850,000 to 1,650,000. In 2012, the Board adopted and the Company's stockholders approved a further increase in the number of shares reserved for issuance under the Plan from 1,650,000 to 2,450,000.

33. The Plan designates the Board and the Compensation Committee as the Plan's administrators.

34. The Board adopted and sought stockholder approval of the Plan in part to satisfy the stockholder-approval requirements described above and thus enable the Company to grant stock options and SARs that qualified as performance-based compensation under Section 162(m). But the terms of the Plan did not contain any actual per-person annual limits on stock options and SARs. Instead, Section 4(d) of the Plan, titled "Section 162(m) Award Limitations" states:

> Notwithstanding any other provision of the Plan other than Section 4(c), ***if the Committee provides that this Section 4(d) is applicable to a particular Award***, no Participant receiving such an Award shall be granted: (i) Options or SARs with respect to more than 500,000 Shares in the aggregate within any fiscal year of the Company; or (ii) Qualified Performance Based Awards which could result in such Participant receiving more than $1,500,000 in cash or the equivalent Fair Market Value of Shares determined at the date of grant for each full or partial fiscal year of the Company contained in the performance period of a particular Qualified Performance Based Award; provided, however, that, if any other Qualified Performance Based Awards are outstanding for such Participant for a given fiscal year, such dollar limitation shall be reduced for each such given fiscal year by the

amount that could be received by the Participant under all such Qualified Performance Based Awards, divided, for each such Qualified Performance Based Award, by the number of full or partial fiscal years of the Company contained in the performance period of each such outstanding Qualified Performance Based Award; provided, however, that the limitations set forth in this Section 4(d) shall be subject to adjustment under Section 4(c) of the Plan only to the extent that such adjustment does not affect the status of any Award intended under Section 6(d) to qualify as "performance based compensation" under Section 162(m) of the Code.

(emphasis added.)

35.     The Board has no obligation under the federal securities laws, the Internal Revenue Code, common law or otherwise, to grant tax-deductible awards. Accordingly, simply by not "provid[ing]" that Section 4(d) be "applicable" to a particular stock option/SAR award, the Board is free to disregard the numerical "limits" contained in Section 4(d), and grant an unlimited number of stock options and SARs to any given plan participant during a given year (subject only to the Plan's aggregate share limit).

## C.  The 2014 and 2015 Plan Amendments

36.     On September 8, 2014, Iteris filed a Schedule 14A Definitive Proxy Statement (the "2014 Proxy") with the SEC in connection with its 2014 Annual Meeting of Stockholders (the "2014 Annual Meeting"), which was scheduled for October 17, 2014.

37.     As disclosed in the 2014 Proxy, as of June 30, 2014, there were only 257,964 shares available for issuance under the Plan. At the time, Iteris had 272 employees (including officers), six advisors, and six non-employee directors eligible to receive awards under the Plan.

38.     In the 2014 Proxy, the Board sought stockholder approval of an amendment to the Plan that would increase the number of shares reserved for issuance by an additional 1,500,000 shares (the "2014 Amendment"). The Board sought approval of this amendment in Proposal Two of the 2014 Proxy, titled "Approval of an amendment to the 2007 Omnibus Incentive Plan."

39.     As described in the 2014 Proxy, the Board "believe[d]" that approval of the increase in the reserved shares was "necessary to assure that a sufficient reserve of the common stock remains available for issuance under the plan to allow [the Company] to continue to utilize

8

equity incentives to attract and retain the services of individuals essential to our long-term growth and success."

40. In stark contrast to the Plan itself, the 2014 Proxy affirmatively and unequivocally represented that the Plan imposes an absolute limit on the amount of stock options and SARs that may be granted to an individual during any fiscal year, expressly stating that *no one may receive* in any fiscal year more than 500,000 stock options and SARs.

41. Specifically, in a section describing the Plan's "principal features," Proposal Two in the 2014 Proxy stated: "No person may be granted stock options or SARs (defined below) under the 2007 Plan with respect to more than 500,000 shares of common stock in the aggregate within any fiscal year."

42. The 2014 Proxy further stated:

> The 2007 Plan's provisions are consistent in form with the performance-based compensation rules, so that if the committee that grants options or SARs consists exclusively of members of the board of directors of the Company who qualify as "outside directors," and the exercise price (or deemed exercise price, with respect to SARs) is not less than the fair market value of the shares of common stock to which such grants relate, the compensation income arising on exercise of those options or SARs should qualify as performance-based compensation which is deductible even if that income would be in excess of the otherwise applicable limits on deductible compensation income under Code Section 162(m).

43. In unconditionally representing to stockholders that stock options granted under the Plan by "outside directors" at a fair market value exercise price will qualify as tax-deductible performance-based compensation under Section 162(m), this disclosure affirmatively misled stockholders to believe that the Board would not grant more than 500,000 stock options or SARs to any one person in any given year.

44. As disclosed at the end of Proposal Two: "The Board of Directors recommends a vote "FOR" approval of the amendment to the 2007 Omnibus Incentive Plan to increase the number of shares reserved for issuance thereunder by 1,500,000 shares."

45. At the Company's 2014 Annual Meeting on October 17, 2014, on the basis of the Board's materially false and misleading disclosures, stockholders voted to approve the 2014 Amendment.

46. On July 29, 2015, Iteris filed a Schedule 14A Definitive Proxy Statement (the "2015 Proxy") with the SEC in connection with its 2015 Annual Meeting of Stockholders (the "2015 Annual Meeting"), which was scheduled for September 24, 2015.

47. As disclosed in the 2015 Proxy, as of June 30, 2015, only 1,425,055 shares remained available for issuance under the Plan. At that time, Iteris had 310 employees (including officers), twelve advisors and five non-employee directors eligible to receive awards under the Plan.

48. In the 2015 Proxy, the Board sought stockholder approval of an amendment to the Plan that would increase the number of shares reserved for issuance by an additional 1,000,000 shares (the "2015 Amendment"). The Board sought approval of the 2015 Amendment in Proposal Three of the 2015 Proxy, titled "Approval of an amendment to the 2007 Omnibus Incentive Plan."

49. As described in the 2015 Proxy, the Board "believe[d]" that approval of the increase in the reserved shares was "necessary to assure that a sufficient reserve of the common stock remains available for issuance under the plan to allow [the Company] to continue to utilize equity incentives to attract and retain the services of individuals, including a new Chief Executive Officer, essential to [the Company's] long-term growth and success."

50. The Board again falsely represented to the Company's stockholders that the Plan contained a per-participant fiscal-year limit on the amount of stock options and SARs that could be granted.

51. Specifically, in Proposal Three, the 2015 Proxy provided a description of the Plan's "principal features" and stated: "No person may be granted stock options or SARs (defined below) under the 2007 Plan with respect to more than 500,000 shares of common stock in the aggregate within any fiscal year."

52.     The 2015 Proxy further stated:

> The 2007 Plan's provisions are consistent in form with the performance-based compensation rules, so that if the committee that grants options or SARs consists exclusively of members of the board of directors of the Company who qualify as "outside directors," and the exercise price (or deemed exercise price, with respect to SARs) is not less than the fair market value of the shares of common stock to which such grants relate, the compensation income arising on exercise of those options or SARs should qualify as performance-based compensation which is deductible even if that income would be in excess of the otherwise applicable limits on deductible compensation income under Code Section 162(m).

53.     Again, in unconditionally representing to stockholders that stock options granted under the Plan by "outside directors" at a fair market value exercise price will qualify as tax-deductible performance-based compensation under Section 162(m), this disclosure affirmatively misled stockholders to believe that the Board would not grant more than 500,000 stock options or SARs to any one person in any given year.

54.     As disclosed at the end of Proposal Three: "The Board of Directors recommends a vote "FOR" approval of the amendment to the 2007 Omnibus Incentive Plan to increase the number of shares reserved for issuance thereunder by 1,000,000 shares."

55.     At the Company's 2015 Annual Meeting on September 24, 2015, stockholders voted to approve the 2015 Amendment on the basis of the Board's materially false and misleading disclosures.

**D. The Board granted stock options to Bergera that greatly exceeded the "limit" that the Board described as a material feature of the Plan and promised to adhere to**

56.     On September 22, 2015, Iteris filed an 8-K (the "8-K") with the SEC, in which the Company announced that it had appointed Bergera to serve as President and Chief Executive Officer. As described in the 8-K, in connection with his appointment, Bergera was to receive a stock option to purchase 1,350,000 shares of the Company's common stock under the Plan. Bergera's employment agreement was attached to the 8-K and likewise stated:

> Stock Option.  As soon as reasonably practicable following the first day of Executive's employment with the Company (the "Start Date"), the Board (or the

Compensation Committee of the Board) shall grant to Executive an option to purchase up to One Million Three Hundred Fifty Thousand (1,350,000) shares of the Company's Common Stock (the "Option") at an exercise price equal to the closing sales price of the Company's Common Stock on the grant date as reported by the NYSE Market.  The Vesting Commencement Date of the Option shall be Executive's Start Date.  The Option shall be granted pursuant to and shall be subject to the terms and conditions of the Company's 2007 Omnibus Incentive Plan (the "Plan").

57. According to a Form 4 Bergera later filed with the SEC, he was awarded the 1,350,000 stock options under the Plan on September 23, 2015.

58. As described above, the per-participant "limit" for stock options/SARs described in the 2014 Proxy and 2015 Proxy is illusory. Contrary to what the Board led stockholders to believe, *i.e.*, that there was an absolute individual annual cap of 500,000 shares on such awards, the Board went ahead and simply provided Bergera as many stock options as it wished simply by "provid[ing]" that Section 4(d) not be "applicable" to this award.

### E. The 2014 and 2015 Amendments, and resulting unauthorized awards issued pursuant thereto, should be rescinded

59. Stockholders of Delaware corporations have the right to cast fully informed votes based on truthful proxy solicitations from their fiduciaries. Whether the Plan would actually limit the amount of stock options and SARs that the Board could grant under the Plan to a single person in one year is information that a reasonable Iteris stockholder would have found important in determining whether to approve the 2014 Amendment and the 2015 Amendment.

60. The 2.5 million shares of Iteris common stock that the 2014 and 2015 Amendments made available for issuance represented approximately 8% of the Company's outstanding common stock as of August 21, 2014. As shares are issued to insiders under the Plan, the Company's public stockholders suffer a dilution of their stake in the Company.

61. But, as described above, the 2014 and 2015 Amendments were intended to serve beneficial purposes as well, both to retain the hundreds of Company employees and align their interests with those of the stockholders. Additionally, during the past three years, stock option awards under the Plan have served as the sole source of equity compensation granted to the

Company's executive officers, presumably an important factor in aligning their interests with the interests of stockholders.

62. In weighing the benefits of the 2014 and 2015 Amendments against the negative effects of dilution, a reasonable Iteris stockholder certainly would have found it important to understand the true nature of any per-person "limit" on stock options – the primary equity vehicle used by the Board to compensate employees. A real limit – such as the one the Board misled stockholders to believe actually existed – helps ensure that stock options granted under the Plan are more proportionally distributed among the hundreds of Iteris employees (or even at the very least among all of the Company's executive officers) rather than just handed out to a single high-level individual such as the CEO.

63. A reasonable and fully informed Iteris stockholder may well have elected to vote against the 2014 and 2015 Amendments if he or she were adequately informed that the Plan does not actually contain annual per-participant limits on stock options, but rather allows the Board to grant a virtually unlimited amount of stock options (subject only to the aggregate limit) to any individual.

64. The grant of 1,350,000 stock options to Bergera in September 2015 emphasizes the unfairness of the Board's material misrepresentations about the Plan's per-person limit.  In just one day, the Board utilized 54% of the total 2.5 million share capacity provided by the 2014 and 2015 Amendments with a single award to Bergera – 850,000 shares more than the Board, in seeking stockholder approval of the Amendments, told stockholders it would be allowed to grant.

65. Such a mega-grant dilutes the Company's stockholders, and undermines the Plan's stated purpose to serve as an equity vehicle for *all* of the Company's employees. Indeed, since April 2015, the Board has granted a total of 1,595,000 stock options to just five Iteris executives, an additional 60,000 stock options to themselves, and a grand total of just 62,500 stock options to a group of 436 persons comprising the Company's other employees. Thus, nearly 97% of the stock options the Board has granted have gone to Iteris's top management and the Board itself.

13

66. Had the Company's stockholders been told the truth about the terms of the Plan, they may not have voted in favor of the 2014 and 2015 Plan Amendments.

67. Accordingly, the 2014 Proxy and 2015 Proxy were materially false and misleading.

68. Based on the false and misleading 2014 Proxy and 2015 Proxy, the Company's stockholders voted to approve the 2014 Amendment and 2015 Amendment, respectively.

69. The vote of the stockholders to approve the 2014 and 2015 Amendments should be deemed ineffective and the 2014 and 2015 Amendments should be rescinded.

70. Moreover, it is apparent that the Board has issued many awards under the Plan using shares that were added in connection with the 2014 and 2015 Amendments. Because those shares were not properly authorized by stockholders pursuant to valid votes, the grants are invalid and must be surrendered.

## DEMAND FUTILITY ALLEGATIONS

71. Plaintiff brings this action derivatively on behalf of Iteris to redress injuries suffered, and yet to be suffered, by the Company as a direct and proximate result of the Individual Defendants' misconduct. Plaintiff is a stockholder of Iteris and will adequately represent the interests of the Company in this litigation.

72. At the time of this filing, the Board comprises eight members: Bergera, D. Kyle Cerminara ("Cerminara"), Char, Daly, Miner, Mooney, Thomas, and Williams, *i.e.*, the Current Board. Each of the Current Board members, other than Cerminara, has been named as a Defendant in this action.

73. Plaintiff did not make a demand on the Current Board prior to instituting this action. A pre-suit demand upon the Current Board is a useless and futile action, and therefore excused.

74. Each Current Board member (other than Cerminara) was on the Board that adopted the 2014 Amendment and 2015 Amendment and knowingly and intentionally sought and recommended stockholder approval of those amendments through the issuance of false and

14

misleading proxy statements. The Board's actions in adopting amendments to the Plan, and then recommending that stockholders approve those amendments through the issuance of false and misleading proxy statements could not have been a good faith exercise of business judgment. Accordingly, because a majority of the Current Board adopted and recommended approval of the 2014 and 2015 Plan Amendments, demand is excused.

75. Additionally, during the past two years, each Current Board member has received stock awards under the Plan as part of their compensation package. To the extent the 2014 and 2015 Amendments are rescinded, each of those awards will be null and void. Each Current Board member thus has a strong financial incentive to maintain the status quo by not authorizing any corrective action that would force them to disgorge compensation they received under the Plan.  Accordingly, each Current Board member is interested in this litigation, and would not be able to impartially consider a demand.  As such, demand is excused.

## CLASS ACTION ALLEGATIONS

76. Pursuant to Federal Rule of Procedure 23, Plaintiff brings this action on his own behalf and as a class action on behalf of those who held Iteris stock as of the close of business on July 28, 2015, which was the record date for stockholders entitled to vote at the 2015 Annual Meeting, and August 21, 2014, which was the record date for stockholders entitled to vote at the 2014 Annual Meeting (the "Class"). Defendants are excluded from the Class, as are Defendants' affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

77. This action is properly maintainable as a class action.

78. The Class is so numerous that joinder of all members is impracticable. The Company had 31,891,457 shares outstanding as of July 28, 2015, and 32,673,927 shares outstanding as of August 21, 2014. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, upon information and belief, there are thousands of members in the Class.

79. Questions of law and fact are common to the Class, including, *inter alia*, the following:

   (i) whether the 2014 and 2015 Proxy Statements contained materially false and misleading statements, or omitted information necessary to render them not misleading;

   (ii) whether Plaintiff and the other members of the Class have been or will be harmed by the wrongs complained of herein; and

   (iii) whether Plaintiff and the Class are entitled to injunctive relief as a result of Defendants' wrongful conduct.

80. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of other members of the Class and Plaintiff has the same interests as the other members of the Class. All Iteris stockholders were forced to cast an uninformed vote as a result of the materially false and misleading 2014 and 2015 Proxy Statements. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

81. The prosecution of separate actions by individuals members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair their ability to protect their interests.

82. Defendants have acted, and refused to act, on grounds that apply generally to the Class, and are causing injury to the Class, such that final injunctive or declaratory relief is appropriate on behalf of the Class as a whole.

83. The questions of law and fact common to the members of the Class predominate over any questions affecting only its individual members, such that a class action is superior to any other available method for fairly and efficiently adjudicating the controversy.

## COUNT I
### Breach of Fiduciary Duty
### (Derivative claim against all Individual Defendants except Bergera)

84. Plaintiff repeats all previous allegations as if set forth in full herein.

85. The Defendants owed stockholders a fiduciary duty, which included a duty to speak truthfully when seeking stockholder action.

86. The 2014 Proxy and 2015 Proxy contained materially false and misleading statements concerning the Plan's annual per-person stock option/SAR grant limit and omitted information necessary in order to make the statements therein not false or misleading, specifically, that the purported limit may be exceeded in the Board's unilateral discretion.

87. As explained above, the material misrepresentations in the 2014 and 2015 Proxy Statements misled stockholders about a material aspect of the Board's authority under the Plan and proximately resulted in stockholders voting to approve the 2014 and 2015 Amendments, which in turn led to the Board's improper grant of shares of Iteris stock, including the 1.35 million stock options issued to Bergera.

88. Accordingly, Plaintiff and the Company are entitled to equitable relief, including but not limited to an order rescinding Bergera's stock option award.

89. Plaintiff and the Company have no adequate remedy at law.

## COUNT II
### Breach of Fiduciary Duties
### (Class claim brought directly against all Defendants except Bergera)

90. Plaintiff repeats the allegations of paragraphs 1-70 and 76-83 as if set forth in full herein.

91. The 2014 Board breached its fiduciary duty by causing the Company to issue the materially false and misleading 2014 Proxy.

92. As a result, the vote of the stockholders to approve the Plan Amendment at the 2014 Annual Meeting was not fully informed and is invalid. The Plan Amendment approved at the 2014 Annual Meeting, therefore, should be rescinded.

93. The 2015 Board breached its fiduciary duty by causing the Company to issue the materially false and misleading 2015 Proxy.

94. As a result, the vote of the stockholders to approve the Plan Amendment at the 2015 Annual Meeting was not fully informed and is invalid. The Plan Amendment approved at the 2015 Annual Meeting, therefore, should be rescinded.

95. As a result, Plaintiff and the Class members are being, and will continue to be, harmed.

96. Plaintiff and the Class have no adequate remedy at law.

## COUNT III
### Unjust Enrichment
### (Derivative claim against Bergera)

97. Plaintiff repeats the allegations of paragraphs 1-75 and 84-89 as if set forth fully herein.

98. Bergera received unauthorized personal financial benefits as a result of the stock options challenged herein.

99. It would be unconscionable and against fundamental principles of justice, equity, and good conscience for Bergera to retain the benefits of the awards that were granted as a proximate result of the Board's breach of its fiduciary duties.

100. Bergera has been unjustly enriched at the expense and to the detriment of the Company.

101. Accordingly, this Court should order Bergera to disgorge the 1.35 million stock options the Board granted him in September 2015.

102. Plaintiff and the Company have no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

B. A declaration that the 2014 Proxy and 2015 Proxy were materially false and misleading;

C. Rescinding the 2014 Amendment approved at the 2014 Annual Meeting;

D. Rescinding the 2015 Amendment approved at the 2015 Annual Meeting;

E. An order declaring any awards made using shares added to the Plan by the 2014 and 2015 Amendments, including Bergera's September 2015 1.35 million stock option award, to be invalid and subject to disgorgement;

F. Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance of fees and costs for Plaintiff's attorneys, experts, and accountants; and

G. Granting Plaintiff such other and further relief as the Court may deem just and proper.

Dated: September 15, 2016

Of Counsel:

Steven J. Purcell
Douglas E. Julie
Robert H. Lefkowitz
PURCELL JULIE & LEFKOWITZ LLP
65 Broadway, Suite 828
New York, New York 10006
212-725-1000

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff*